(573 P.2d 628)
No. 48,735

HELEN ZOE BRADLEY, *Appellee*, v. The Estate of Nita Jackson, Deceased, EARL SAPP, Executor, *Appellant.*

Opinion filed December 9, 1977.

*Terry E. Relihan,* of Smith Center, for the appellant.

*Joseph S. Davis, Jr.,* of Breyfogle, Gardner, Davis & Kreamer, of Olathe, for the appellee.

Before HARMAN, C.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: This appeal involves a construction of the residuary clause of the last will and testament of Nita Jackson, deceased. The residuary clause of decedent's will reads: "All the rest and residue of my estate I give, devise and bequeath unto Mattie Grubb of Esbone, Kansas, and to my lawful heirs."

The trial court concluded the residuary clause passed one-half of the residue of the estate of Nita Jackson to Mattie Grubb and the remaining one-half to the testatrix's lawful heirs *per stirpes.* The executor argues that the testatrix intended a gift to a class composed of Mattie Grubb and the heirs of the testatrix and that a *per capita* distribution was intended.

If the decision of the trial court is affirmed, Mattie Grubb will receive one-half of the $136,468.29 available for distribution under the residuary clause and the appellee, Helen Zoe Bradley, will take $34,117.07. If the appellant succeeds, Mattie Grubb's distributive share will be $6,498.49 and the appellee, Helen Zoe Bradley, will likewise take $6,498.49 in the *per capita* distribution instead of $34,117.07.

The lawful heirs of Nita Jackson, deceased, consist of the children and grandchildren of Nita Jackson's uncles. Helen Zoe Bradley is the sole surviving heir of a brother of Nita Jackson's father. The remaining nineteen heirs are the surviving heirs of two brothers of Nita Jackson's mother who would receive shares

ranging from less than $5,000 to less than $2,000 per person under the trial court's judgment.

By agreement of the parties, the case was submitted to the trial court without any evidence being offered. This court's scope of review is broad. Where the only evidence before the trial court was *documentary* in nature, this court can interpret the document as well as the trial court. (*Wallace v. Magie,* 214 Kan. 481, 522 P.2d 989; *Keeler Co. v. Atchison, T. & S. F. Rly. Co.,* 187 Kan. 125, 354 P.2d 368.)

The first task of this court in interpreting a will is to ascertain if there is an ambiguity or conflict requiring the use of the rules of judicial construction. (*In re Estate of Graves,* 203 Kan. 762, 457 P.2d 71.) The intention of the testator is the controlling factor in interpreting testamentary provisions. (*In re Estate of Hannah,* 215 Kan. 892, 529 P.2d 154.)

The parties agree that the will is not ambiguous. As a result, no attempt was made to introduce extrinsic evidence to show the testatrix's intent. The trial court found that the will was neither ambiguous nor conflicting. We are thus called upon to determine the intention of the testatrix in interpreting the residuary clause of the will.

A bequest or devise "to my lawful heirs" has a well-defined meaning in Kansas. In *Jackson v. Lee,* 193 Kan. 40, 392 P.2d 92, it was determined the word "heirs" has a commonly understood meaning in this state. An heir is commonly understood to be a person who takes under the Kansas statutes on intestate succession. Where there are no words in the will to qualify the commonly understood meaning, it will be conclusively presumed that the testator intended the word to convey its commonly understood meaning.

As pointed out in *Campbell v. McBurney,* 201 Kan. 26, 31, 439 P.2d 133, the use of the phrase "legal heirs" is an even stronger indication than the use of the word "heirs" that the testator intended the persons entitled to take to do so in the portions designated by the statutes of intestate succession. In *Campbell,* it was determined that in the absence of language indicating an intention that the bequest or devise be *per capita,* the distribution will be *per stirpes* according to the law of descent and distribution.

The testatrix is presumed to have known the law at the time she made her will (*In re Estate of Ricklefs,* 211 Kan. 713, 508 P.2d

866). She therefore is presumed to have known that a *per stirpes* distribution would be made to "my lawful heirs" under the law of descent and distribution and that a *per stirpes* distribution would not be possible if Mattie Grubb were to participate as one of the heirs.

If a meaning contrary to the common legal meaning of "my lawful heirs" had been intended by the testatrix, it could have been indicated simply by adding the words "share and share alike" or "to take *per capita* and not *per stirpes*" or other language of like import.

The trial judge correctly concluded that the heirs of the testatrix take *per stirpes*. Next we turn to the question of what share of the residuum is to be set aside for Mattie Grubb. Appellant urges that we find the testatrix intended to create a single unit whereby all would take *per capita.*

The general rule and that adopted by Kansas is that where the testator has *expressed* an intention for equal distribution by using phrases such as "share and share alike," or "to be divided equally," in a bequest to a named individual and to a class, the named individual would take equally *per capita* with those in the class. (*Tomb v. Bardo,* 153 Kan. 766, 114 P.2d 320; *Neil v. Stuart,* 102 Kan. 242, 169 Pac. 1138.) Unless the word "and" can be interpreted as an intention to join or unite the heirs and Mattie Grubb into one unit, there is no other language that would indicate an intention on the part of the testatrix that she intended Mattie Grubb be a member of the group of "my lawful heirs."

Appellant argues that the use of the conjunction "and" shows an intention on the part of the testatrix to unite Mattie Grubb and the testatrix's "lawful heirs" into one group or one class so that all share equally *per capita.* We cannot agree. It would appear to us the testatrix merely intended to use "and" to join together two prepositional phrases, to-wit: "[U]nto Mattie Grubb of Esbone, Kansas" *and* "to my lawful heirs."

The comments to 13 A.L.R.2d 1023, §13, state that "the use of the word 'and,' in enumerating the beneficiaries has a tendency to show that the testator had them in mind as different groups, rather than as a single group." (See, also, cases cited in 16 A.L.R. 15, 28; 78 A.L.R. 1385, 1391; and 126 A.L.R. 157, 164.)

The fact the testatrix designated Mattie Grubb by name, while not conclusive, is persuasive not to find a class gift. (*Corbett v.*

*Skaggs,* 111 Kan. 380, 207 Pac. 819.) Also persuasive is *In re Estate of Lester,* 191 Kan. 83, 87-88, 379 P.2d 275, in which the court stated it was not "inclined to extend the meaning of members of a class to a group which a testator may consider as friends, neighbors, or even those to whom he may feel 'much closer.' " Even more persuasive is the fact that a *per stirpes* distribution pursuant to the Kansas descent and distribution statutes would not be feasible if Mattie Grubb, an unrelated acquaintance, were to participate with the heirs of the testatrix.

In view of the foregoing and in the absence of clear intention on the part of the testatrix to include Mattie Grubb in a class with the testatrix's lawful heirs to take *per capita,* we interpret the residuary clause to pass one-half of the residue to Mattie Grubb and the remaining one-half of the residue to the testatrix's lawful heirs under the laws of descent and distribution *per stirpes.*

Affirmed.